IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BRANDON L. MOE, individually and on behalf of all individuals of the class similarly situated, | CV 19-23-BU-BMM-KLD |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| vs. | |
| GEICO INDEMNITY CO., GOVERNMENT EMPLOYEES INSURANCE COMPANY, and JOHN DOES I-XX, | |
| Defendants. | |

This insurance bad faith case comes before the Court on Defendants GEICO

Indemnity Co. ("GEICO Indemnity") and Government Employees Insurance

Company's ("Government Employees") (collectively "GEICO")[1] motion for

summary judgment on Plaintiff Brandon L. Moe's ("Moe") remaining claims.

(Doc. 86). For the reasons discussed below, Defendants' motion should be granted

---

[1] Moe and Government Employees have also filed cross-motions for partial summary judgment on the issue of whether Government Employees adjusted Moe's claim. (Docs. 91 and 117). Those motions will be addressed separately, if necessary, after presiding Chief United States District Judge Brian Morris rules on these Findings and Recommendation. For purposes of simplicity while discussing the pending motion for summary judgment on all remaining claims, the Court will refer to Government Employees and GEICO Indemnity collectively as "GEICO."

and this matter should be dismissed.

## I.   <u>Background</u>

On March 15, 2015, Moe was injured in an automobile accident when the vehicle in which he was riding as a passenger was struck from behind by another vehicle driven by Loretta Wescott. (Doc. 100, at ¶¶ 1-2). At the time of the accident, Wescott's vehicle was insured under an automobile liability insurance policy issued by GEICO. (Doc. 100, at ¶ 2).

On March 17, 2015, Moe called GEICO and spoke with claims adjuster Lilliana Stevens about the accident. He reported low back pain and said he planned to go to his primary care physician the following day. (Doc. 100, at ¶3). On March 18, 2015, Moe visited his primary care physician and was referred to Health in Motion Physical Therapy + Wellness ("Health in Motion"). Moe visited Health in Motion eleven times for physical therapy between March 19, 2015 and June 22, 2015. (Doc. 100, at ¶ 16). For those eleven visits, Moe incurred medical bills totaling $2,345. (Doc. 100, at ¶ 17).

On March 18, 2015, GEICO sent Moe a letter requesting that he complete a HIPAA compliant authorization form ("Medical Authorization Form") that would give GEICO permission to request documentation from his medical providers. (Doc. 100, at ¶ 4). During a call with Stevens on May 18, 2015, Moe indicated he

would submit the Medical Authorization Form to GEICO once he had completed physical therapy. (Doc. 87-11; Doc. 100 at ¶ 31). Stevens' notes reflect that GEICO received the Medical Authorization Form back from Moe on July 6, 2015. (Doc. 100, at ¶ 5; Doc. 100-6, at 5).

During this period, Moe had health insurance through his employer administered by Blue Cross Blue Shield of Montana ("Blue Cross"). (Doc. 100, at ¶ 7). Although Moe provided Health in Motion with his Blue Cross insurance card and filled out an intake form authorizing Health in Motion to bill Blue Cross (Doc. 87, at ¶¶ 11-12; Doc. 87-4, at 5), Health in Motion sent Moe's medical bills to GEICO. (Doc. 87, at ¶ 18). Moe testified at his deposition that it was his understanding that Health in Motion would submit his medical bills to GEICO for payment. (Doc. 100, at ¶ 18). Between April 7, 2015 and September 2, 2015, Health in Motion submitted Moe's medical bills to GEICO six times. (Doc. 100, at p. 35 ¶ 28). Each time, GEICO responded with a form letter explaining that GEICO is "not a health insurance carrier and specifically not an insurer of Brandon Moe," and suggesting that Health in Motion contact its "patient to secure filing information." (Doc. 87, at ¶ 21; Doc. 100, at p. 35, ¶ 30).

On April 21, 2015, Health in Motion gave Moe a copy of GEICO's April 15, 2015 form letter and informed Moe that his medical bills were unpaid. (Doc. 87-7;

3

Doc. 100, at ¶ 22). On or about May 26, 2015, Health in Motion sent Moe a medical lien and requested that he sign and return it. (Doc. 100-37; Doc. 100-38). Moe did not sign and return the form as requested. (Doc. 100, at ¶ 25). Health in Motion also mailed GEICO a notice that it was claiming a medical lien. (Doc. 100-39).

On June 30, 2015, Moe's employer provided a completed wage verification form to GEICO, which indicated that Moe was paid for all time missed following the accident. (Doc. 87-12; Doc. 100 at ¶ 33). Moe missed approximately two-and-a-half days of work, and was compensated for his time off by using sick leave. (Doc. 87, at ¶¶ 34-35; Doc. 100, at 14, 36).

On August 14, 2015, Moe called GEICO and advised Stevens that he had completed his physical therapy. Stevens told Moe that GEICO would obtain his medical records and then begin an evaluation of his claim for resolution. (Doc. 100, at ¶ 36). On October 15, 2015, GEICO tried reaching Moe by phone but could not reach him. (Doc. 100, at ¶ 38). The next day, GEICO sent Moe a letter requesting that he contact GEICO regarding his claim. (Doc. 100, at ¶ 39). Several weeks later, on December 7, 2015, Moe called GEICO and advised Stevens that he had a new phone number. (Doc. 100, at ¶ 40). During their call, Stevens offered to settle Moe's claim for $1,000 plus outstanding medical bills. (Doc. 87-9, at 4; Doc.

100 at ¶ 41). Moe rejected the offer and stated that he would get an attorney. (Doc. 100, at ¶ 42).

After December 7, 2015, Moe became unresponsive to GEICO's attempt to contact him regarding his claim. (Doc. 100, at ¶ 43). On January 7, 2016, GEICO sent Moe a letter asking him to contact GEICO regarding his claim. (Doc. 100, at ¶ 47). Moe did not respond (Doc. 100, at ¶ 48), and on March 15, 2016, GEICO sent Moe a letter advising him of the statute of limitations on his claim and informing him that GEICO would close his file due to lack of responsiveness if he did not respond. (Doc. 100, at ¶ 49). Again, Moe did not respond. (Doc. 100, at ¶ 50).

All told, GEICO spoke with Moe six times between March 17, 2015 and December 7, 2015 regarding his bodily injury claim. (Doc. 87-9, at 3; Doc. 100 at 34, ¶ 20). GEICO also sent Moe multiple letters and left him multiple voicemails regarding his bodily injury claim during this period. (Doc. 87-9 at 4; Doc. 100, at ¶ 29).

Moe first spoke with attorney Mark Luebeck regarding his claim on June 20, 2016. (Doc. 100, at ¶ 51). In September 2016, Health in Motion sent Moe's bills to collections and Credit Systems contacted Moe regarding his unpaid medical bills. (Doc. 100, at ¶ 53). Moe formally retained Luebeck on October 4, 2016. (Doc. 100, at ¶ 52). In a letter dated January 6, 2017, Luebeck informed GEICO that he was

5

representing Moe. (Doc. 100, at ¶ 57; Doc. 87-22). Luebeck stated it was his understanding that GEICO had refused payment for Moe's accident-related medical bills and asked GEICO to state in writing why it had denied payment. (Doc. 87-22). GEICO responded by way of a letter dated January 12, 2017, explaining that it "did not refuse payment for Mr. Moe's medical bills, *Ridley* was not requested." (Doc. 100, at 36, ¶ 33; Doc. 100-18).

On March 1, 2017, GEICO spoke with Luebeck about Moe's claim for the first time. (Doc. 100, at ¶ 62). During the call, GEICO asked if Moe was still treating and Leubeck stated that he would let GEICO know after speaking with Moe. (Doc. 100, at ¶ 63). GEICO followed up with Luebeck by way of a letter dated March 31, 2017, in which it asked for a status update regarding Moe's claim, requested any documentation regarding medical bills, and inquired when it could expect a demand. (Doc. 87-28). On April 28, 2017, Stevens left Luebeck a voicemail again asking for status update on Moe's claim and whether Moe wanted advance payment of medical bills. (Doc. 87-30). On May 24, 2017, after learning from Moe that he was represented by counsel, Credit Systems sent Luebeck a letter for the purpose of filing a medical lien for payment of the unpaid medical bills from Health in Motion should Luebeck receive any settlement money on Moe's behalf. (Doc. 100-48).

Approximately one month later, on June 29, 2017, Luebeck sent GEICO a *Ridley* demand letter requesting that GEICO pay Moe's accident-related medical bills and wage loss. (Doc. 87, at ¶ 72; Doc. 100-41). GEICO responded with a letter to Luebeck on July 7, 2017, acknowledging receipt of the *Ridley* demand and requesting confirmation that Luebeck's office would satisfying any medical liens. (Doc. 87-32). After a follow-up letter and voicemail from GEICO (Doc. 87-33; Doc. 87-23), Luebeck advised GEICO on September 7, 2017, that his office would satisfy any valid medical liens. (Doc. 100-42). On September 19, 2017, GEICO issued a check to Luebeck in the amount of $2,481.00 for Moe's medical bills. (Doc. 87-35; Doc. 100 at ¶ 78). On October 10, 2017, GEICO issued a check to Luebeck in the amount of $979.00 for Moe's alleged lost wages. (Doc. 87-36; Doc. 100 at ¶ 79).

Moe commenced this action in December 2018, alleging that GEICO Indemnity failed to promptly advance payment for his medical bills and lost wages under *Ridley v. Guaranty Nat'l. Ins. Co.*, 951 P.2d 987 (Mont. 1997) and *Dubray v. Farmers Ins. Exch.*, 36 P.3d 897 (Mont. 2001) during the period when he was not represented by counsel.[2] In October 2019, Moe filed an Amended Complaint

---

[2] Moe acknowledges that he "has never asserted *Ridley* or *Dubray* violations after Luebeck was hired" (Doc. 99, at 13), and the Court has previously determined that

7

adding Government Employees as a defendant. (Doc. 36). The Amended

Complaint asserts four claims for relief: (1) declaratory and injunctive relief

(Count I); (2) violations of Montana's Unfair Trade Practices Act ("UTPA") and

common law bad faith (Count II); (3) class action (Count III); and (4) common

fund (Count IV). (Doc. 36).

The Court has dismissed Moe's claim for declaratory and injunctive relief in

its entirety (Count I), and has dismissed Moe's UTPA claim to the extent it alleges

violations of Mont. Code Ann. § 33-18-201(1) and (3) (Count II). (Docs. 50, 59,

77). For purposes of GEICO's summary judgment motion, Moe's remaining

claims are for violations of Mont. Code Ann. § 33-18-201(4), (6) and (13) and for

common law bad faith (Count II).[3]

## II.   <u>**Summary Judgment Standard**</u>

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary

judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." The party seeking

---

Moe does not state a statutory or common law bad faith claim for the period of
time that Luebeck was representing Moe in the underlying matter. (Doc. 27, at 6).

[3] The Court has stayed briefing on class certification and class-related discovery
until the determination GEICO's motion for summary judgment and the parties'
cross-motions for partial summary judgment. (Doc. 113)

summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

9

## III.   **Discussion**

GEICO moves for summary judgment as to Moe's remaining claims of UTPA violations and common law bad faith on the grounds that that: (1) GEICO had no duty to advance pay Moe's medical bills or alleged lost wages because Moe did not request that it do so; (2) GEICO had a reasonable basis in law and fact for not making advance payments absent a request from Moe that it do so; (3) Moe suffered no actual damages and his UTPA claim therefore fails as a matter of law; and (4) Moe's common law bad faith claim is barred by the statute of limitations. Moe opposes GEICO's motion on all fronts, and takes the threshold position that many of GEICO's arguments are barred by the law of the case.

### A.   **Law of the Case**

"The 'law of the case' doctrine generally precludes a court from 'reconsidering an issue previously decided by the same court, or a higher court in the identical case.'" *Admiral Insurance Company v. Dual Trucking, Inc.*, 2021 WL 1541718, * 1 (D. Mont. Apr. 20, 2021) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)). "For the doctrine to apply, the issue in question must have been 'decided either expressly or by necessary implication in [the] previous disposition." *Thomas v. Bible*, 983 F.3d 152, 154 (9th Cir. 1993) (quoting *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.

10

1990)).

Moe contends that several of GEICO's arguments, namely, that a claimant must demand *Ridley*, that medical providers cannot request *Ridley*, and that GEICO had a reasonable basis in law for not making advance payments, are barred by the law of the case. Moe maintains the Court decided these legal issues in his favor when it ruled on GEICO's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

In July 2019, United States Magistrate Judge Lynch issued a Findings and Recommendation on GEICO's motion to dismiss, which was later adopted in full by presiding United States District Court Judge Brian Morris. (Doc. 27; Doc. 50). Taking the factual allegations in the complaint as true, the Court concluded that Moe stated a claim for relief under Mont. Code Ann. § 33-18-201(4), (6) and (13), and that Moe's claim for common law bad faith also survived.

Addressing subsections (6) and (13), the Court noted that the terms "claim" is not defined in the text of the UTPA and stated that "an injured third-party can make a 'claim' for *Ridley* damages by demanding or requesting payment from the tortfeasor's insurer." (Doc. 27, at 6). The Court recognized that "[a] *Ridley* demand need not be denominated as such to trigger an insurer's statutory obligation to advance payment for an injured third-party's claimant's medical expenses and lost

11

wages." (Doc. 27, at 6-7). Accepting as true Moe's allegation that GEICO received a request for payment of his medical expenses and lost wages but attempted to settle with him for the entirety of his bodily injury claim instead of making advance payments, and drawing all reasonable inferences in Moe's favor, the Court determined that the complaint was sufficient to state a claim for relief under subsections (6) and (13). (Doc. 27, at 8).

Addressing Mont. Code Ann § 33-18-201(4), the Court recognized that whether a liability insurer's duty to investigate is triggered is a factually dependent inquiry, and "the mere fact that a medical provider submits bills for payment would not, standing alone, necessarily trigger an insurer's obligations under the UTPA." (Doc. 27, at 11). The Court expressly stated that whether Moe would be able to establish facts sufficient to support his claim under subsection (4) and withstand a motion for summary judgment remained to be seen. (Doc. 27, at 11).

As this statement reflects, the legal standard that applies to a motion to dismiss for failure to state claim -- which requires the court to accept the factual allegations in the complaint as true -- is fundamentally different from the standard that applies to a motion for summary judgment -- which requires the court to consider whether the moving party has met its burden of showing there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

12

See e.g. *Andrews Farms v. Calcot, Ltd.*, 693 F.Supp.2d 1154, 1166 (E.D. Cal. 2010) (highlighting the differences between the two standards). In light of these distinctions, and because factual development has yet to take place at the motion to dismiss stage, the law of the case doctrine does not typically apply to such preliminary motions. See e.g., *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (recognizing that pretrial rulings are often based on incomplete information and do not become the law of the case where factual development is ongoing); *McKenzie v. BellSouth Telecom*, 209 F.3d 508, 513 (6th Cir. 2000) (A ruling "on a motion to dismiss does not establish the law of the case for purpose of summary judgment, when the complaint has been supplemented by discovery.").

Contrary to Moe's argument, there is nothing in the Court's decision on GEICO's motion to dismiss that precludes GEICO from taking the position on summary judgment that an injured third-party must demand or request *Ridley* payments, and that the undisputed evidence of record demonstrates that Moe failed to do so here. Nor is there anything in the Court's ruling precluding GEICO from arguing on summary judgment that it had a reasonable basis in law and fact for not making advance payments.

Citing to a portion of the Court's prior Findings and Recommendation that relied on *Sell v. American Family Mut. Ins. Co.*, 2011 WL 1042688, at *5 (D.

13

Mont. Jan. 31, 2011), Moe argues the Court has already ruled as a matter of law that *Ridley* is triggered when a medical provider submits medical bills for payment. (Doc. 99, at 14, citing Doc. 27, at 7-8). But Moe reads this portion of the Court's prior Findings and Recommendation too broadly.

In *Sell*, the third-party claimant's medical bills "had been submitted" to the insurer for payment. *Sell v. American Family Mut. Ins. Co.*, 2011 WL 1042688, at *5 (D. Mont. Jan. 31, 2011) (findings and recommendation). The insurer argued it was not obligated to make advance payments because there had been no *Ridley* claim, and the demand for payment came from the claimant's medical provider.[4] *Sell*, 2011 WL 1042688, at *5; *Sell v. American Family Mut. Ins. Co.*, 2011 WL 1044563, at *1 (D. Mont. March 18, 2011) (order adopting findings and recommendation). The court rejected this argument, noting it was clear based on the record that the insurer "considered the submitted medical bills as a request to advance pay" because it sent the bills to the claimant's attorney with letters explaining that it would not advance pay her medical bills before a settlement was reached. *Sell*, 2011 WL at 1042688, at *5. The court concluded the insurer was aware that the third-party claimant was requesting advance payment of her medical

---

[4] Regardless of whether the medical bills were submitted by the claimant through her attorney or her medical provider, *Sell* is distinguishable for the reasons stated below.

14

expenses and held that her failure to make a formal *Ridley* demand was not fatal to her claim under subsections (6) and (13) of Mont. Code Ann. § 33-18-201. *Sell,* 2011 WL 1042688, at *5.

Analogizing to *Sell,* this Court noted that Moe alleged his medical providers submitted his medical bills to GEICO and demanded payment, and further alleged that GEICO received a request for payment of his medical expenses and lost wages but attempted to settle with him for the entirety of his bodily injury claim instead of making advance payments. (Doc. 27, at 7-8). While this Court agreed that Moe's allegations were sufficient to survive dismissal for failure to state a claim, it did not rule as a matter of law that *Ridley* is triggered when a medical provider submits medical bills for payment, even if the claimant does not demand or request advance payment from the insurer.

Furthermore, the facts developed during discovery distinguish this case from *Sell*. Unlike *Sell*, where it was clear that the insurer understood the claimant was asking it to advance pay her medical bills but refused to do so before settlement, the evidence developed during discovery demonstrates the same was not true here. It is undisputed that Moe did not demand or request that GEICO make advance payments. (Doc. 100, at 36, ¶ 33). Also unlike Sell, GEICO never told Moe that it would not pay his medical bills. (Doc. 100, at ¶ 32; Doc. 100, at 36, ¶ 33). Moe

15

agrees that "he never requested advance payments, so [GEICO] did not advance payments." (Doc. 100, at 36, ¶ 33).

Instead, Moe's theory is that *Ridley* is triggered when a medical provider submits medical bills for payment, even if the claimant does not demand or request advance payments from the insurer. The Court made clear when ruling on GEICO's motion to dismiss that Moe was free to bring his arguments regarding how an insurer's obligations are triggered under *Ridley* at a later stage in the litigation, thereby leaving that issue open. (Doc. 50, at 3). Contrary to Moe's law of the case argument, the Court did not resolve this legal issue in his favor when ruling on GEICO's motion to dismiss. For these reasons, the law of the case doctrine does not apply.

### B.   Mont. Code Ann. § 33-18-201(4), (6), and (13)

#### 1.   *Ridley* Demand

GEICO maintains it is entitled to summary judgment on Moe's claims under Mont. Code Ann. § 33-18-201(4), (6), and (13) because it had no duty to advance pay Moe's medical bills or alleged lost wages absent a demand or request that it do so. GEICO begins by looking to the plain language of the UTPA, which provides in the subsections at issue here that an insurer may not: "refuse to pay *claims* without conducting a reasonable investigation;" "neglect to attempt in good faith to

effectuate prompt, fair and equitable settlement of *claims* in which liability has become reasonably clear;" or "fail to promptly settle *claims*, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." Mont. Code Ann. § 33-18-201(4), (6), (3) (italics added).

As evidenced by the statute's use of the term "claim," the duties identified in Mont. Code Ann. § 33-18-201 "address the relationship between a liability insurer and a third-party claimant once a claim has been filed." *Coleman Construction, Inc. v. Diamond State Ins. Co.*, 2008 WL 2357365, at \*3 (D. Mont. June 5, 2008). "In other words, the duties imposed upon a liability insurer by § 33-18-201 are 'triggered' when a claim is made." *Coleman*, 2008 WL 2357365, at \*3. If no claim is submitted to the insurer, the UTPA does not apply. *Coleman,* 2008 WL 2357365, at \*3. See also *McNeil v. Currie*, 830 P.2d 1241, 1246 (Mont. 1992) (explaining that the UTPA "governs situations in which claims have been made to insurance companies" and holding that § 33-18-201 did not apply because, under the facts of the case, the insured "never submitted a claim" to the insurer).

Applying this principle here, GEICO argues a third-party claimant like Moe must submit a "claim" for *Ridley* damages in order to trigger an insurer's duties to make advance payments under subsections (6) and (13) and to conduct a

17

reasonable investigation under subsection (4). With respect to what constitutes a "claim" for *Ridley* damages, GEICO cites this Court's ruling on its motion to dismiss, which recognized that "[f]or purposes of subsections (6) and (13), an injured third-party can make a 'claim' for *Ridley* damages by demanding or requesting payment from the tortfeasor's insurer." (Doc. 27, at 6 (citing *Ridley,* 951 P.2d at 992-93)). GEICO further contends that, in the context of a claim for advance payments, an insurer cannot violate subsection (4) unless the claimant makes a "claim" for advance payments and the claim is refused. See Mont. Code Ann. § 33-18-201(4) (stating that an insurer may not "refuse to pay claims" without conducting a reasonable investigation). GEICO argues the undisputed facts demonstrate that Moe did not make a "claim" for advance payment of his medical bills and lost wages, as required to trigger GEICO's obligations under Mont. Code Ann. § 33-18-201(4), (6), and (13).

Moe recognizes this Court has held that a third-party "*can* make a claim for *Ridley* damages by demanding or requesting payment from the tortfeasor's insurer" (Doc. 27, at 6 (italics added)), but argues this was simply a statement of what a claimant may do to make a *Ridley* claim, rather than what a claimant must do. Moe maintains that the UTPA imposes duties on insurers, not claimants, and takes the position that requiring claimants to demand or request *Ridley* would "turn the

18

UTPA on its head" by imposing an obligation on claimants to trigger the duties imposed on insurers by the UTPA. (Doc. 99, at 17). As Moe correctly points out, the Montana Supreme Court expressly held in *Ridley* that subsections (6) and (13) of § 33-18-201 impose an obligation on an insurer to pay medical expenses as incurred by an injured third-party tort victim when liability is reasonably clear. *Ridley*, 951 P.2d at 991. Since its 1997 decision in *Ridley,* the Montana Supreme Court has consistently reaffirmed that "insurers have a duty to advance-pay an injured third party's medical expenses when liability is reasonably clear." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 454 P.3d 1210, (Mont. 2019). In one such recent case, the Montana Supreme Court explained that "*Ridley* is a two-part test: (1) whether liability is reasonably clear and (2) whether it is reasonably clear that medical expense is causally related to the accident." *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017).

Moe maintains that adopting GEICO's position and requiring a claimant to demand or request advance payments from the insurer would effectively create a third prong to the *Ridley* test, thereby running afoul of *Teeter* and other Montana Supreme Court precedent. According to Moe, once he submitted his bodily injury claim, GEICO was obligated to comply with its duties under the UTPA by effectuating *Ridley* payments, regardless of whether he demanded or requested that

it do so. The Court finds Moe's arguments unpersuasive for the reasons outlined below.

To begin with, Montana caselaw does not support Moe's position. As GEICO accurately points out in its briefing, in each case Moe cites concerning advance pay obligations, the claimant clearly requested or demanded advance payments. In *Ridley* itself, for example, the third-party claimant's attorney advised the insurance company "that his client could not afford the medical treatment that had been prescribed for the injuries caused by the collision…and asked that those expenses be paid" by the insurance company. *Ridley*, 951 P.3d at 988. Likewise, in *Dubray*, the third-party claimant submitted a claim "for property damage and personal injuries caused by the accident," after which the insurance company initially made advance payments for the claimant's medical expenses but then declined to continue doing so. *Dubray*, 36 P.3d at 898. And in *Teeter*, after the accident the third-party claimant "retained counsel demanding advance payment of medical costs" from the insurance company. *Teeter*, 406 P.3d 464, 466 (Mont. 2017). See also *Watters v. Guaranty Nat. Ins. Co.*, 3 P.3d 626, 638-40 (Mont. 2000) (explaining that "with liability and entitlement to the policy limits clearly established," the claimants sent the insurance company a letter demanding payment of the insured's bodily injury policy limits).

20

Moe does not dispute that the claimant in each of these cases demanded or requested advance payment, but argues this was simply part of the Montana Supreme Court's "factual synopsis" rather than a statement of law that such a demand or request is necessary to trigger an insurer's advance pay obligations under the UTPA. (Doc. 99, at 19). While it appears the Montana Supreme Court has not directly addressed the issue of whether a claimant must demand or request advance payments in order to trigger an insurer's advance pay obligations under the UTPA, the Court is nevertheless persuaded by the fact that there do not appear to be any advance pay cases in which the Montana Supreme Court has held that an insurer has a duty to make advance payments absent a demand or request by the third-party claimant that it do so. Notwithstanding Moe's argument to the contrary, requiring that a third-party claimant communicate a demand or request for advance payments to the insurer is consistent with *Teeter*, which can easily be read as setting forth the two-part test that applies under *Ridley* once such a demand or request has been made.

Moe also cites *Peterson v. St. Paul Fire and Marine Insurance Co.*, 239 P.3d 904, 911-12 (Mont. 2010) and *Lorang v. Fortis,* 192 P.3d 186, 218 (Mont. 2008) for the proposition that the Montana Supreme Court has consistently placed the duty to comply with the UTPA on the insurer, even without an express demand

from the claimant. (Doc. 99, at 19). *Peterson* and *Lorang* are certainly consistent

with the general and well-accepted principle that the UTPA addresses insurer

conduct and imposes duties on liability insurers, but they say nothing about

specific issue here, namely, whether an insurer must make advance payments upon

receipt of a third-party claimant's medical bills absent a demand or request from

the claimant that it do so. As set forth above, Montana caselaw addressing an

insurer's advance pay obligations consistently reflects that a demand or request by

the claimant is an assumed prerequisite for triggering an insurer's advance pay

obligations under the UTPA.

      This prerequisite is reflected once again in the Montana Supreme Court's

recent decision in *Dannels v. BNSF*, 483 P.3d 495 (Mont. 2021), which addressed

the issue of whether the Federal Employers' Liability Act (FELA) preempts an

injured employee's state law bad faith claims. In support of preemption, BNSF

asserted "that the UTPA's advance payment obligation interferes with an

employer's right under FELA to only be held liable for those damages determined

by a jury at trial." *Dannels*, 483 P.3d at 503. The Court did not reach the merits of

BNSF's argument, "noting at the outset that [the plaintiff] made no demand for

advance payment of either his wage loss or medical bills *until after* the jury had

rendered a verdict in his FELA claim," and had not sought a declaratory judgment

establishing BNSF's advance payment obligations. *Dannels*, 483 P.3d at 503.

Because the issue was not squarely before it, the Court declined to speculate on

whether the UTPA's advance payment obligation "may conceivably conflict with a

railroad's payment obligations under the FELA." *Dannels*, 483 P.3d at 504.

Although *Dannels* did not directly address the issue at hand, it is consistent with

and further supports GEICO's position that a demand or request for advance

payment of medical expenses or wage loss is necessary to trigger an insurer's

advance pay obligations under the UTPA.

In addition, as GEICO persuasively argues, requiring an insurer to pay a

third-party claimant's medical bills without a request from the claimant that it do

so would make it difficult for the insurer to balance the duties it owes to both the

insured and to the injured third-party claimant. See *High County Paving Inc. v.*

*United Fire & Casualty Co.*, 454 P.3d 1210, 1213 (Mont. 2019) (recognizing "the

dilemma faced by insurers in balancing its duties to both is insureds and to injured

third-party claimants.").

In a report addressing accepted standards and best practices in Montana,

GEICO's expert explains that Montana law allows a claimant to first use health

insurance to pay medical expenses and then often recover the same medical

expenses from a tortfeasor's insurer, thereby "double-dipping" by having the same

medical bill paid twice and benefitting from the health insurer's preferred provider agreement. (Doc. 87, at ¶ 87; Doc. 87-43, at 4-5). Thus, it is the typical practice of Montana attorneys representing injured claimants to instruct insurers not to pay a claimant's medical bills directly. (Doc. 87, at ¶ 88; Doc. 87-43, at 3-4).

GEICO has presented evidence that in many cases third-party claimants and their attorneys expressly inform GEICO that they do not want GEICO to make payments directly to health care providers. (Doc. 87, at ¶ 89; Doc. 87-10). Instead, third-party claimants often inform GEICO that they want their health insurer to pay their medical bills so the claimant can receive payment for the medical expense twice and get the benefit of the discount established by the health insurer' preferred provider agreement with the medical provider. (Doc. 100, at 30, ¶ 90; Doc. 87-10). This practice also benefits the insured tortfeasor because there is more money left to pay the claimant's damages and thus more indemnity protection left to protect the insured under the liability policy. (Doc. 87-43, at 6).

Moe has not submitted any evidence to contrary, and simply asserts that in certain situations an attorney representing an injured third-party claimant may elect to submit medical bills to health insurance first and instruct the tortfeasor's insurer to not pay medical bills. (Doc. 100, at 30-31, ¶¶ 88-91). Even assuming that might sometimes be the case, the undisputed evidence submitted by GEICO illustrates

that requiring an insurer to make advance payments even when there has been no demand or request that it do so would often run counter to the best interests of the third-party claimant.

Such a requirement would also run counter to the general principles of insurance law articulated in the recent case of *Philadelphia Indemnity Ins. Co. v. Great Falls Rescue Mission*, 2021 WL 2916946 (D. Mont. July 12, 2021). As the *Philadelphia Indemnity* court recognized, Montana law does not ordinarily impose duties on an insurer as to third parties until the third party actually submits a claim. *Philadelphia Indemnity*, 2021 WL 2916946, at *6. In addition, it is well established "that insurers have no obligation under Montana law to solicit claims from those who may possibly have a claim," including third-party claimants like Moe. *Philadelphia Indemnity*, 2021 WL 2916946, at *6. Consistent with these general principles, and for the reasons discussed above, the Court agrees with GEICO and concludes that a claimant must communicate a request or demand for advance payments to the insurer in order to make a "claim" for *Ridley* damages under the UTPA.

Here, the undisputed facts demonstrate that Moe did not make a "claim" for *Ridley* damages because he did not demand or request that GEICO pay his medical expenses or lost wages as they were incurred. The record reflects that GEICO

25

spoke with Moe about his bodily injury claim six times between March 2015 and December 2015. (Doc. 87-9, at 3; Doc. 100, 34, ¶ 20). Although Moe was aware that his medical bills had not been paid (Doc. 100, at ¶ 26), he did not ask GEICO to pay those in advance of settlement. (Doc. 100, at ¶ 30). To the contrary, Moe indicated in May 2015 that he wanted to complete physical therapy before submitting his Medical Authorization Form to GEICO, and told Stevens he would advise GEICO when he had completed treatment. (Doc. 100, at ¶ 31). When Moe called GEICO in August 2015 to advise that he had completed physical therapy, GEICO told Moe it would obtain his medical records, which would take some time, and then begin evaluating his claim for resolution. (Doc. 100, at ¶ 36). Moe responded that this was "great." (Doc. 100, at ¶ 37). Notably, Moe agrees that he never requested that GEICO make advance payments on his medical bills. (Doc. 100, at 36, ¶33).

With respect to lost wages, Moe's employer provided a completed wage verification form to GEICO in June 2015, which indicated that Moe was paid for all time missed following the accident. (Doc. 87-12). Moe missed approximately two-and-a-half days of work, and was compensated for his time off by using sick leave. (Doc. 87, at ¶¶ 34-35; Doc. 100, at 14, 36). Moe agrees that GEICO did not deny payment lost wages at that time. As Moe explains it, he never requested

26

advance payments for lost wages, so GEICO did not advance payments. (Doc. 100, at 37, ¶ 41).

Because Moe did not demand or request that GEICO pay his medical bills and lost wages as they were incurred, he did not make a "claim" as required to trigger GEICO advance pay obligations under subsections (6) and (13) of § 33-18-201. The same holds true for Moe's claim under subsection (4) that GEICO failed to conduct a reasonable investigation into his medical bills and lost wages. Mont. Code Ann. § 33-18-201(4) states that an insurer may not "refuse to pay claims" without conducting a reasonable investigation. Because the undisputed facts demonstrate that Moe never made a claim for advance payment of his medical bills and lost wages, GEICO cannot be held liable under subsection (4) for refusing to pay such a claim without conducting a reasonable investigation.

2.      Reasonable Basis in Law and Fact

Even if the Court were to find that GEICO had a duty to make advance payments absent a demand or request that it do so, GEICO argues it is entitled to summary judgment on Moe's remaining UTPA claims because it had a reasonable basis in law and fact for not making advance payments.

An insurer may not be held liable under the UTPA if it "had a reasonable basis in law or fact for contesting the claim or the amount of the claim, whichever

27

is in issue." Mont. Code Ann. § 33-18-242(5). The Montana Supreme Court has

"generally held that an insurer is entitled to challenge a claim on the basis of

debatable law or facts and will not be held liable" for bad faith "if its position is

not wholly unreasonable." *State Farm Mutual Auto Ins. Co. v. Freyer*, 312 P.3d

403, 418 (Mont. 2013) (quoting *Safeco Inc. Co. v. Ellinghouse*, 725 P.2d 217, 223

(Mont. 1986)). "Reasonableness is a question of law for the court to determine

when it depends entirely on interpreting relevant legal precedents and evaluating

the insurer's proffered defense under those precedents." *Freyer*, 312 P.3d at 419

(quoting *Redies v. Attorneys Liab. Protec. Soc.*, 150 P.3d 930, 938 (Mont. 2007)).

In determining whether an insured had "a reasonable basis in law for contesting

coverage, 'it is first necessary to survey the legal landscape as it existed during the

relevant time period.'" *West for Lee v. United Services Automobile Association*,

384 P.3d 58, 61 (Mont. 2016) (quoting *Freyer*, 312 P.3d at 418). Absent "caselaw

on point, 'the determinative question' is whether the law in effect at the time,

caselaw or statutory, provided sufficient guidance to signal to a reasonable insurer

that its grounds for denying the claim were not meritorious." *Freyer*, 312 P.3d at

419 (quoting *Redies*, 150 P.3d at 940).

  As discussed above, Montana caselaw does not support Moe's position that

an insurer has a duty to make advance payments even where the third-party

claimant does not demand or request that it do so. Although the Montana Supreme Court has not directly addressed this issue, review of the relevant caselaw reflects that a third-party claimant must demand or request advance payment of medical expenses or lost wages in order to trigger an insurer's advance pay obligations under the UTPA. See supra pages 19-22. Given the current legal landscape in Montana, GEICO had a reasonable basis in law for not making advance payments absent a demand or request from Moe that it do so.

In addition, the undisputed evidence demonstrates that GEICO had an objectively reasonable basis in fact for not paying Moe's medical providers upon receipt of his medical bills and for not making advance payments. As discussed above, Moe does not dispute that, in most cases, third-party claimants like him benefit are better served by having health insurance pay first. (Doc. 100, at 30-31, ¶¶ 88-91). And here, in fact, Moe indicated to GEICO that he wanted to complete treatment before submitting his Medical Authorization Form. (Doc. 100, at ¶ 31). After Moe returned his Medical Authorization Form and informed GEICO that he had completed treatment, GEICO advised him that it would evaluate his claim after obtaining his medical records. (Doc. 100, at ¶36). Moe responded that this was "great," thereby indicating that he was satisfied with GEICO's response. (Doc. 110, at ¶ 37). On this record, and because Moe did not ask GEICO to make

29

advance payment for his medical bills or lost wages, GEICO had a reasonable basis in fact for not unilaterally deciding to make advance payments.

Therefore, GEICO is entitled to summary judgment on Moe's remaining UTPA claims for the additional reason that it had a reasonable basis in law and fact for not making advance payments.

### C.    Common Law Bad Faith

This Court previously determined that because Moe's claim for common law bad faith is indistinguishable from his UTPA claim, it survived GEICO's motion to dismiss to the same extent that Moe's UPTA claim did. (Doc. 27). The same is true for purposes of summary judgment. Because Moe's claims for statutory and common law bad faith are substantively identical, GEICO is entitled to summary judgment on Moe's common law bad faith claim for the same reasons it is entitled to summary judgment on his UTPA claim.

In addition, GEICO argues Moe's claim for common law bad faith is barred by the statute of limitations. In Montana, common law bad faith claims are subject to a three-year statute of limitations. *Nelson v. Hartford Ins. Co. of Midwest*, 2012 WL 5874457, at *3 (D. Mont. Nov. 20, 2012) (citing *Brewington v. Employers Fire Ins. Co.*, 992 P.2d 237, 240 (Mont. 1999)) *aff'd* 570 Fed. Appx. 695 (9th Cir. 2014). "Unless otherwise provided by statute, the statute of limitations begins to

run from the time a cause of action accrues." *Nelson*, 2012 WL 5874457, at \*3 (citing Mont. Code Ann. § 27-2-102(2)).

A claim accrues and "the statute of limitations begins to run when 'the last fact essential to the cause of action' occurs, regardless of whether the damages are complete." *Nelson*, 2012 WL 5874457, at \*3 (quoting *E.W. & D.W. v. D.C.H.*, 754 P.2d 817, 819-20 (Mont. 1998)). A common law bad faith claim "accrues when the insurer first denies coverage" and "can accrue before a judgment or settlement" of the underlying claim. *Nelson*, 2012 WL 5874457, at \*4. See also *Ayote v. American Economy, Ins. Co.*, 2010 WL 768753, at \*7 (D. Mont. March 5, 2010) (finding that common law bad faith claim with respect to *Ridley* payments arose when the insurer refused the third-party claimant's *Ridley* demands).

As set forth in the Amended Complaint, Moe alleges that GEICO committed bad faith by not making advance payments for his medical bills and lost wages as those damages were incurred, thereby violating its obligations under *Ridley/Dubray*. (Doc. 36, at ¶¶ 1, 18-40, 51). In particular, Moe alleges that GEICO was "made aware that [Moe] was treating, incurred medical bills and suffered lost wages. Moreover, [Moe's] medical provider, Health in Motion, sent [GEICO] the medical records and bills and requested payment. After receiving those records and bills, [GEICO] failed to effectuate prompt payment of those

31

bills." (Doc. 36, at ¶ 19). In the same vein, Moe further alleges that GEICO's "conduct in this case confirms this unlawful practice because [GEICO] refused to effectuate *Ridley* payments even though [Moe's] medical provider had requested payment of medical bills. Instead of effectuating payment upon request by [Moe's] medical provider, [GEICO] refused on the incongruent and extraneous statement that it was not a 'health insurance carrier,' maliciously intended to deflect its *Ridley* obligations." (Doc. 36, at ¶ 30). Like his UTPA claim, Moe's common law bad faith claim is thus premised on the theory that GEICO's *Ridley* obligations were automatically triggered when it received Moe's medical bills from Health in Motion, even without a demand or request from Moe that GEICO pay those bills, and that GEICO violated Montana law by failing to effectuate prompt payment.

The record reflects that Health in Motion sent Moe's medical bills to GEICO six times between April 7, 2015 and September 2, 2015. (Doc. 100, at p. 35 ¶ 28). On April 15, 2015, GEICO sent Health in Motion the first of six form letters explaining that it was not Moe's health insurance carrier and suggesting that Health in Motion contact Moe to "to secure filing information." (Doc. 100, at ¶ 21; Doc 100 at p. 35 ¶ 30). On April 21, 2015, Health in Motion provided Moe with a copy of GEICO's letter and his statement with Health in Motion. (Doc. 100 at ¶ 22; Doc. 87-4 at 8-9). On or about May 26, 2015, Health in Motion asked Moe to sign

and return a Medical Lien form. (Doc. 87-4, at 11; Doc.87-8). Although Moe did not sign and return the Medical Lien, the document again informed Moe of his outstanding balance and that he was "directly and fully responsible to said health care provider for medical bills for services renders…" (Doc. 87-8). Moe does not dispute that, during this period, he knew that his medical bills with Health in Motion had not been paid by GEICO and he "didn't do anything" about this. (Doc. 100, at ¶¶ 25-26).

GEICO argues Moe's common law bad faith claim accrued, and the statute of limitations began to run, as early as April 21, 2015 and no later than June 2015 because the undisputed evidence demonstrates Moe knew by then that GEICO was not paying his medical bills as they were incurred. Because Moe did not file this action until December 2018, more than three years later, GEICO maintains his claim for common law bad faith is time barred.

In response, Moe relies on the principle that a common law bad faith claim typically accrues when a claim is denied by the insurer, and points out that GEICO has admitted it never denied advance payments because Moe never demanded or requested them. Because GEICO agrees that it did not deny a "claim" for advance payments, Moe argues his claim for common law bad faith could not have accrued in April or June 2015. Rather, Moe maintains his bad faith claim did not accrue

until January 12, 2017, when GEICO sent Luebeck a letter explaining for the first time that "We did not refuse payment for Mr. Moe's medical bills, *Ridley* was not requested." (Doc. 100-18).

The Court finds GEICO's position more persuasive. Under Moe's logic, where, as here, no "claim" has been made and so no "claim" has been denied, the claimant would arguably have an unlimited time within which to bring a common law bad faith claim, regardless of when the insurer's alleged bad faith occurred. GEICO's failure to pay Moe's medical bills as incurred and received from Health In Motion forms the basis of Moe's common law bad faith claim. The undisputed evidence demonstrates that by June 2015 at the latest, Moe knew that GEICO was not paying his medical bills as incurred. Thus, the last fact essential to Moe's common law bad faith claim had occurred by June 2015, and the claim accrued at that time. Because Moe did not file suit until December 2018 – more than three years later – his claim for common law bad faith is barred by the statute of limitations.

## IV.   <u>Conclusion</u>

For the reasons outlined above, the Court concludes GEICO is entitled to summary judgment as to Moe's remaining claims of UTPA violations and common law bad faith on the grounds that that: (1) GEICO had no duty to advance pay

34

Moe's medical bills or alleged lost wages because Moe did not request that it do

so; (2) GEICO had a reasonable basis in law and fact for not making advance

payments absent a request from Moe that it do so; and (3) Moe's common law bad

faith claim is barred by the statute of limitations. Having so concluded, the Court

declines to address GEICO's argument that Moe's UTPA also fails as a matter of

law because Moe suffered no actual damages. Because Moe's remaining individual

claims should be dismissed, he cannot maintain those claims on a behalf of a class.

Accordingly,

　　　　IT IS RECOMMENDED that Defendants' Motion for Summary Judgment

(Doc. 86) be GRANTED and this case be dismissed.

　　　　NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of

the Findings and Recommendations of United States Magistrate Judge upon the

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

　　　　DATED this 15th day of September, 2021.

　　　　　　　　　　　　　　　　　Kathleen L. DeSoto
　　　　　　　　　　　　　　　　　United States Magistrate Judge